**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| IMELDA OJEDA-CARDENAS,<br>Petitioner,<br>v.<br>UNITED STATES ATTORNEYS OFFICE, et al.,<br>Respondents. | No. 5:26-cv-04390-AYP<br>**ORDER GRANTING PETITION AND ISSUING WRIT FOR HABEAS CORPUS** |

## I. SUMMARY

Petitioner Imelda Ojeda-Cardenas ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (the "Petition"). Petitioner is currently detained by Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California. In this habeas action, Petitioner challenges the legality of her re-detention and continued civil confinement, asserting that Respondents violated the Due Process Clause of the Fifth Amendment by revoking her liberty without notice, without an opportunity to be heard as to whether she poses a danger or a flight risk, and absent a material change in circumstances warranting her sudden re-detention. Petitioner argues that by releasing her on an order of her own recognizance ("OREC") after determining that she was not a danger nor a flight risk, the

Department of Homeland Security ("DHS") conferred upon her a freedom from physical restraint protected by the Due Process Clause, and that this liberty interest could not be withdrawn absent constitutionally adequate procedural safeguards.

Having reviewed the record, and consistent with several recent decisions by this Court and in this District, the Court concludes that Petitioner's re-detention on July 2, 2026—without notice, justification, or evidence of changed circumstances—violates due process. Accordingly, the Court ORDERS that the Petition be granted, and a writ of habeas corpus be issued requiring Petitioner's immediate release and prohibiting future re-detention absent adequate pre-deprivation notice and an individualized hearing.

## II. FACTS AND PROCEDURAL HISTORY

Petitioner represents that she is a native and citizen of Mexico. (Dkt. No. 1 ¶35.) Petitioner contends that she entered the United States on or about March of 2024. *Id.* Petitioner asserts that upon her arrival, she was detained by DHS and, after being determined not to be a flight risk nor a danger to the community, she was subsequently released pursuant to an OREC. (Dkt. No. 1 ¶1 and ¶36.)

Petitioner represents that following her release, she appeared for her required ICE check-ins on at least 10 occasions, she took a photo on a phone application 1 time per month, ICE visited her home on three (3) occasions, and she had approximately six (6) video check-ins with ICE. (Dkt. No. 1 ¶37.) Petitioner also contends that she attended several immigration court hearings before the Executive Office for Immigration Review ("EOIR"). (Dkt. No. 1 ¶38.) Petitioner represents that during her residence in the United States she resided with her boyfriend, applied for Asylum, developed ties to the community, and

did not incur any criminal arrests or convictions. (Dkt. No. 1 ¶40.)

Petitioner asserts that she was ordered removed on June 9, 2026, and appealed the decision on June 30, 2026.[1] (Dkt. No. 1 ¶38.) Petitioner contends that she was scheduled for an ICE check-in on July 1, 2026, where her officer placed a GPS ankle monitor on her and indicated that it would be taken off on July 2, 2026, if she appealed her case. *Id.* Petitioner asserts that on July 2, 2026, she appeared for another ICE check-in, where she was taken into ICE custody. *Id.* Petitioner represents that she was not provided any explanation as to the reason for her sudden detention. (Dkt. No. 1 ¶39.) The current record before the Court indicates that on July 24, 2026, an immigration judge ("IJ") denied Petitioner's bond because "Respondent surreptitiously entered the United States and as such falls within the ambit of INA § 235(b)(2)(A), which divests jurisdiction from Immigration Judges to hear bond requests or grant bond to aliens who are present in the United States without admission." (Dkt. No. 1 at 26.)

Petitioner filed the instant habeas corpus petition pursuant to 28 U.S.C. § 2241 on August 4, 2026. (Dkt. No. 1.) Respondents filed their Answer (the "Answer") on August 12, 2026. (Dkt. No. 7.) Petitioner filed her Reply (the "Reply") on August 13, 2026. (Dkt. No. 8.) Both parties have consented to proceed before the Magistrate Judge. The matter is now fully briefed and submitted for decision.

## III. DISCUSSION

Petitioner argues that her re-detention and continued civil confinement

---

[1] Pursuant to Fed. R. Evid. 201, the Court takes judicial notice of the EOIR's Automated Case Information website which states that Petitioner's June 30, 2026, appeal remains pending. *United States v. Vlha*, 142 F.4th 1194, 1200 n.2 (9th Cir.) ("Reports of government agencies are subject to judicial notice."), cert. denied, 146 S. Ct. 625 (2025); *Jupiter v. McAleenan*, 2020 WL 4919712, *2 n.1 (C.D. Cal. 2020) (taking judicial notice of ICE's Fiscal Year 2019 Enforcement and Removal Operations report).

violate the Fifth Amendment's guarantee of due process because Respondents revoked her conditional liberty without providing notice, without any opportunity to contest whether she posed a flight risk or a danger to the community, and without any material change in circumstances. Petitioner therefore seeks immediate release, arguing that Respondents' actions contravened the procedural protections the Constitution requires before depriving an individual of liberty.

Respondents do not address Petitioner's due process claims. Respondents, in their Answer, state that "Petitioner appears to be entitled to request and receive an initial bond hearing pursuant to *Rodriguez Vazquez v. Bostock*, --- F.4th ---, 2026 WL 2196424 (9th Cir. 2026)" and that "to the extent Petitioner has not yet requested such a bond hearing from the Immigration Court, Petitioner has not yet properly exhausted her available administrative remedies, and her Petition is defective on that basis." (Dkt. No. 7 at 2.) Consistent with precedent, courts in this Circuit have regarded such silence as a concession. *See e.g., Soleimani v. Larose*, No. 25-CV-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting habeas petition where government's response to the petition failed to respond to numerous claims raised in the petition, including a Fifth Amendment due process claim); *Singh v. Chiang*, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession). The Court notes this position and independently evaluates Petitioner's claims on the merits.

**A. The Court Has Subject Matter Jurisdiction**

This Court has subject matter jurisdiction. 28 U.S.C. § 2241 "makes the writ of habeas corpus available to all persons 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Trinidad y Garcia v. Thomas,* 683 F.3d 952, 956 (9th Cir. 2012) (en banc) (quoting 28 U.S.C.

§ 2241(c)(3)). "The writ of habeas corpus historically provides a remedy to noncitizens challenging executive detention." *Id.* (citing INS v. St. Cyr, 533 U.S. 289, 301–03 (2001)). Accordingly, 8 U.S.C. § 1252(g) does not bar review here. The Court has subject matter jurisdiction over Petitioner's habeas claims because § 2241 remains an available forum for statutory and constitutional challenges to detention. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

Having established jurisdiction, the Court turns to the merits of Petitioner's due process claim.

**B. Petitioner's Detention Violates Due Process.**

The Fifth Amendment protects all persons in the United States, including noncitizens in removal proceedings, from deprivation of liberty without due process of law. Freedom from physical restraint lies at the core of this protection. *See Zadvydas*, 533 U.S. at 690–91. When DHS released Petitioner on an OREC after determining that she was not a danger nor a flight risk, it conferred a conditional liberty interest that may not be withdrawn without constitutionally sufficient process. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019). Agency precedent likewise recognizes that a prior release should not be revoked absent materially changed circumstances. *See Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1194–98 (N.D. Cal. 2017).

The Court analyzes Petitioner's due process claim under the familiar *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. 424 U.S. 319, 335 (1976). Applying these considerations here, each factor weighs strongly in Petitioner's favor.

**1. Private Interest**

Petitioner argues that his re-detention without notice or a pre-deprivation hearing directly infringed upon the core liberty interest protected by the Fifth

Amendment. Petitioner contends that Respondents deprived him of the ability to contest whether he posed a danger or flight risk before revoking his conditional liberty.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Fifth Amendment provides that "[n]o person shall ... be deprived of ... liberty ... without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–33(N.D. Cal. 2025) (collecting cases).

In *Morrissey v. Brewer*, the Supreme Court recognized that the decision to release a criminal defendant from custody on parole creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings; "[j]ust as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *accord Garro Pinchi*, 792 F.Supp.3d 1025, 1032–33 (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after

that individual is released from custody she has a protected liberty interest in remaining out of custody”).

The Court agrees with Petitioner that due process principles prohibit Respondents from revoking her release and re-detaining her absent adequate pre-deprivation process.

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in remaining free from custody. Petitioner asserts she filed for asylum, maintained full compliance with the conditions of her OREC, developed ties to the community, and has maintained full compliance with all United States laws and regulations. (Dkt. No. 1 ¶¶ 37-40.) While Petitioner remained subject to the conditions of her OREC during this time, “a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles h[er] to constitutional due process before [s]he is re-incarcerated.” *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi*, 792 F. Supp. 3d at 1032 (“Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.”) (collecting cases). This conditional liberty is “ ‘valuable and must be seen as within the protection of the Fourteenth Amendment.’ ” *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

In consideration of the guiding principles and relevant authority, and the undisputed record of Petitioner's compliant period of release, the Court finds that Petitioner's interest in remaining at liberty is both substantial and well-established. Accordingly, the Court concludes that the Due Process Clause protects Petitioner's substantial interest in maintaining her freedom from confinement. *See Cruz*, 2025 WL 4051129 at 2–6; *C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2025 WL 3059549 at * 10 (E.D. Cal. Nov. 1, 2025) (finding

a petitioner had a constitutionally protected liberty interest in "approximately four years on parole"); *Fernández López v. Wofford*, No. 1:25-cv-01226-KES-SKO, 2025 WL 2959319, at *4 (E.D. Cal. Oct. 17, 2025) (same, with respect to "nearly four years" of parole). *See also Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to "over two years" on an order of release on recognizance).

**2. Risk of Erroneous Deprivation**

With respect to the second *Mathews* factor, the Court finds that Respondents' failure to articulate any change in circumstance preceding Petitioner's re-detention creates a significant risk of erroneous deprivation. Respondents provided no pre-deprivation notice, hearing, or opportunity for Petitioner to challenge the basis for revocation of her release. Additionally, DHS identified no change in circumstances between Petitioner's grant of release and her re-detention on July 2, 2026. Both *Matter of Sugay* and *Saravia* require materially changed circumstances before DHS may revoke a prior release determination. *Sugay*, 17 I. & N. Dec. at 640; Saravia, 280 F. Supp. 3d at 1194–97. Civil immigration detention is constitutionally permissible only to prevent flight or protect the community from danger. *Zadvydas*, 533 U.S. at 690–91. Yet nothing in the record suggests that Petitioner's continued release threatened either interest at the time of her re-detention on July 2, 2026.

First, Respondents identify no material change in circumstances arising between the time of Petitioner's release in March 2024 and her sudden re-detention on July 2, 2026. There are no allegations of criminal conduct, no supervision violations, and no new facts in the record that would lead a reasonable officer to conclude that Petitioner suddenly became a danger or flight risk at the time of her re-detention on July 2, 2026. As both *Matter of Sugay* and *Saravia* make clear, DHS may not revoke a prior release determination absent

such materially changed circumstances. *Matter of Sugay* 17 I. & N. Dec. 637, 640 (B.I.A 1981); *Saravia*, 280 F. Supp. 3d at 1196–97.

Second, the procedure employed here creates a substantial risk of error. Petitioner asserts that DHS released her from custody under an OREC, she applied for asylum, and that she complied with all conditions of her release. (Dkt. No. 1 ¶¶ 37-38.) The record reflects that throughout this entire period, Respondents repeatedly determined that Petitioner could remain safely in the community. *Id.* Yet despite Petitioner's unbroken record of compliance, Respondents provided no advance process to assess whether revoking her release would further the permissible purposes of immigration detention.

The Court is further troubled by the IJ's erroneous conclusion that it lacks jurisdiction to consider bond for individuals detained within the U.S. interior, and the resulting denial of Petitioner's custody redetermination. As an initial matter, the record before the Court indicates that Petitioner has been inspected, admitted, and released on and OREC. Thus, given Petitioner's prior release, due process requires a pre-deprivation hearing before any subsequent deprivation of liberty. *See Nath v. Chestnut*, No. 1:26-CV-01800-DC-CKD (HC), 2026 WL 743356, at *1 (E.D. Cal. Mar. 17, 2026) (collecting cases); *see also R.A.N.O. v. Wofford*, 820 F. Supp. 3d 1094, 1105 (E.D. Cal. 2026) ("The Court concludes that a pre-deprivation hearing is necessary to satisfy due process"); *see also E-M-v. Hermosillo*, No. 3:25-CV-1083-SI, 2026 WL 883776, at *6 (D. Or. Mar. 31, 2026) (stating there are "overwhelming authorities holding that after a noncitizen has been released on conditional parole, due process requires notice and a pre-deprivation hearing"). The Court additionally notes, as Respondents concede in their Answer, that the Ninth Circuit has squarely held that 8 U.S.C. § 1226(a) governs unadmitted noncitizens inside the United States, guaranteeing them an individualized bond hearing. *See Rodriguez Vazquez*, 2026 WL 2196424, at *10–12. Post-deprivation custody hearings do not remedy the lack of

constitutionally required pre-deprivation process. On this record, the Court concludes that the risk of erroneous deprivation is unacceptably high.

**3. Government Interest**

As to the third *Mathews* factor, the Government's interests, as reflected in the record before the Court, are insufficient to justify the deprivation of liberty here. Although the Government has a legitimate interest in enforcing the immigration laws, that interest does not overcome the Fifth Amendment's requirement that constitutional procedural safeguards be provided before re-detaining a person who has been safely residing in the community.

Courts considering similar re-detentions have consistently concluded that the Respondents' interest in bypassing pre-deprivation procedures is low. *Cruz v. Lyons* held that, where a noncitizen has long been released and compliant, the Respondents have no meaningful countervailing interest in effecting a sudden re-detention without a hearing, particularly because ICE routinely conducts custody hearings and the administrative burden of providing one is minimal. *See* No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025). Likewise, in *López*, the court emphasized that immigration custody hearings are "routine and impose a minimal cost," and that the government's interest in re-arresting a compliant supervisee without a hearing is "low." 2025 WL 2959319, at *6 (cleaned up). *Garro Pinchi* similarly held that due process requires the Government to identify an interest "beyond its own administrative practices" to justify depriving an individual of liberty without pre-deprivation protections, and that detention "for its own sake" or due to the absence of established procedures is not a legitimate governmental interest. 792 F. Supp. 3d at 1035–36. Additionally, *Rodriguez Diaz* reiterated that where a noncitizen has long complied with reporting requirements, the Government's

interest in re-detaining that individual without a hearing prior to detention is especially weak. 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025).

These decisions align with broader Ninth Circuit authority recognizing that the Government has no legitimate interest in detaining individuals who can be safely supervised through less restrictive means. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). They also reflect *Saravia*'s conclusion that the administrative burden of providing a brief, neutral hearing to assess any material change in circumstances is minimal, particularly where DHS already conducts such hearings in other detention contexts. 280 F. Supp. 3d at 1199–1200.

Respondents do not identify any administrative or public-safety reason they could not have provided Petitioner with notice and an opportunity to be heard prior to revoking her liberty. Nor do Respondents identify any individualized risk posed by Petitioner at the time of her re-arrest. On the record before the Court, Respondents' interest in re-detaining Petitioner absent the constitutionally protected pre-deprivation procedures due—without any justification or prior notice—is exceptionally weak. Under *Mathews*, the Government has no interest in bypassing pre-deprivation process in these circumstances.

Accordingly, the third *Mathews* factor weighs decisively in Petitioner's favor.

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Respondents' lack of constitutionally adequate procedures has resulted in Petitioner's unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that the Respondents' re-detention of

Petitioner on July 2, 2026, without adequate pre-deprivation process, violated due process and that she should be released forthwith.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner Imelda Ojeda-Cardenas' (A#221-025-545) immediate release and restoration of liberty to the conditions existing prior to July 1, 2026, along with her personal belongings, including her identification, passport, work permits, and other documentation, and preventing her re-detention absent pre-deprivation notice and a constitutionally adequate pre-deprivation hearing at which the Government must justify the need to confine her prior to her re-detention; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody. Additionally, the Petitioner and the Court shall be provided with at least three (3) days notice prior to Petitioner being removed from this jurisdiction.

IT IS SO ORDERED.

DATED: September 22, 2026

ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE